**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| METRiX TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. AW 04cv1364 |
| | ) | |
| JAY H. BEECHAM, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Come now the Defendants, JAY H. BEECHAM, MIRIAM BERTSCH and 3 SYNERGIES, INC. (collectively, "Defendants"), by their undersigned counsel, and in support of their Motion to Dismiss Pursuant to Rule 12(b)(6) filed contemporaneously herein, do respectively submit the instant Memorandum of Law and, in support thereof, state as follows:

(Table of Contents begins on following page)

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.  The Complaint Fails To Set Forth a *Prima Facie* Case
        Pursuant to the Computer Fraud and Abuse Act
        (18 U.S.C. § 1030)(Counts I & II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  The Complaint Fails To Set Forth a *Prima Facie* Case
        Pursuant to Section 43 (a) of the Lanham Act (Count III) . . . . . . . . . . . . . . . . . . . . 12

    D.  The Complaint Fails to Allege a Violation
        of the Maryland Uniform Trade Secrets Act
        (Md. Code Ann., Com. II Law § 11-1201, *et seq.*) . . . . . . . . . . . . . . . . . . . . . . . . . 19

    E.  Deceit (Count V) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    F.  Breach of Contract (Count VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    G.  Breach of Fiduciary Duty (Count VII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    H.  Intentional Interference with Contract and Intentional
        Interference with Contractual Relations (Counts VIII & IX) . . . . . . . . . . . . . . . . . . 27

    I.  Trespass to Chattel (Count X) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    J.  Indemnity/Contribution (Count XI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    K.  Declaratory Judgment (Count XI(a)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## I.  INTRODUCTION

The instant matter presents a common factual situation.  Defendants Jay Beecham and Miriam Bertsch resigned from their employment with the Plaintiff in April, 2004 and established a competing business.  Significantly, the Defendants' ability to compete was not restricted by either a contract of employment or a covenant prohibiting competition or solicitation.  As is set forth in detail herein, the Defendants, at worst, made incidental use of the Plaintiff's computers in planning to resign and creating their competing enterprise.  The ability to prepare to compete is protected under Maryland law and it is not, in and of itself, actionable.

It is undisputed that the Plaintiff, had it learned of the Defendants' plans, could have terminated the employment of Defendants Beecham and Bertsch, who were employees at will.  In its Complaint, however, the Plaintiff has attempted to cloak their actions with allegations of computer fraud and violations of the Lanham act to gain the jurisdiction of this Court (which it would not otherwise be able to do) and request extraordinary relief from this Court in the form of an order prohibiting the Defendants from competing with the Plaintiff -- in essence, the non-competition covenant that the Plaintiff never obtained during the course of the Defendants' employment.  Numerous other state causes of action are included in the Complaint as well, each of which is addressed herein.

## II.  FACTUAL BACKGROUND

Defendants Beecham and Bertsch were hired by Plaintiff in September, 2002.[1] Complaint

---

[1]     In setting forth the instant summary of the relevant facts and for purposes of submitting this Motion for the Court's consideration, the Defendants have, consistent with the

at ¶¶14 & 15.  Beecham was hired as a "BPR" specialist and Bertsch was hired as a Senior

Business Analyst. *Id.*  Each were supplied with equipment by the Plaintiff including computers

and computer-related equipment and access to Plaintiff's computer database. *Id.* at ¶16.  Plaintiff

informed Beecham and Bertsch of its employment guidelines. *See* Complaint at 5-7, ¶17(a)-(m).

With regard to the Plaintiff's property (computers, etc.), the Plaintiff anticipated that said

property would, in part, be utilized by its employees for purposes unrelated to Plaintiff's

business.  Specifically, the Plaintiff's policy prohibits "excessive or unauthorized use of

METRiX property and supplies, "particularly for personal purposes." *Id.* at 7, ¶17(j).

Approximately one year later, in September, 2003, METRiX bid on and was awarded a

services contract from the United States Department of Health and Human Services ("HHS"). *Id.*

at 8, ¶19.  The contract relates to HHS's National Health Service Corps ("NHSC") which offers

financial assistance to students in healthcare professions in exchange for service in locales which

are in need of adequate healthcare. *Id.*  As described in its Complaint, the services contract

requires Plaintiff:

> (a) to provide assistance to eligible health care service sites throughout the
> nation seeking to hire health care clinicians through the NHSC program; (b) to
> provide career development support to NHSC Scholars seeking employment at
> NHSC approved sites; and (c) to match eligible clinicians and needy communities
> in concert with NHSC staff and other contractors to NHSC.

> *Id.* at 8, ¶20.

In preparing the bid for the NHSC/METRiX contract and in servicing it upon its award to

---

applicable Rules, adopted the facts as pleaded by the Plaintiff in its Complaint.
Defendants would note, however, that many of the facts are significantly in dispute.

Plaintiff, Beecham and Bertsch utilized Plaintiff's computers and databases. *Id.* at 8-9, ¶¶21 & 22.  It is undisputed that both their use of and access to Plaintiff's computers and databases were entirely authorized.  Upon the award of the NHSC/METRiX contract, Bertsch was appointed Project Manager. *Id.* at 9, ¶23.  Beecham assisted Bertsch in management of the contract. *Id.* at 9, ¶24.  Beecham and Bertsch continued in their respective capacities until their resignation in April, 2004. *Id.* at 9, ¶¶23 & 24.  In November, 2003, Beecham and Bertsch were appointed senior vice-presidents of METRiX. *Id.* at 10, ¶27.

Plaintiff alleges that "[a]t least as early as January 2004, Beecham and Bertsch began to conspire to compete with METRiX." *Id.* at 10, ¶28.  At this point in time, Beecham and Bertsch had been managing the NHSC/METRiX contract since its award to Plaintiff.  To the extent that the Plaintiff possessed any proprietary or confidential information or trade secrets, Beecham and Bertsch had, by this point in time, been fully exposed to that information with the complete authorization of the Plaintiff.  Beecham and Bertsch did not disclose their plans to resign their employment or form a competing business. *Id.* at 10, ¶29.  The Plaintiff does **not** allege, however, that Beecham or Bertsch that Beecham and Bertsch accessed any of the Plaintiff's databases following their resignation or utilized any of Plaintiff's property in competing with Plaintiff after their resignation.  The allegations regarding the Defendants' use of Plaintiff's computers to plan their resignation and competing business are set forth in detail in paragraph 30 of the Plaintiff's Complaint and will not be reproduced herein.  To the extent that specific allegations in that section are relevant to the counts in the Complaint, they are discussed in the Argument section below.  In February, 2004, the Defendants utilized the Plaintiff's computers to

5

"create and/or. . .store" a website for the competing business. *Id.* at 13, ¶31.  Both Beecham and

Bertsch resigned their employment with the Plaintiff in April, 2004. *Id.* at 17, ¶¶34 & 35.

### III.  ARGUMENT

A.  Standard of Review.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint;

importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th

Cir.1999)(internal quotations omitted).  A court, in considering such a motion, must "accept the

well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences

derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d

472, 474 (4th Circ.1997).

As a result, a motion pursuant to Rule 12(b)(6) can be granted only if "if appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  In

considering a motion to dismiss, however, the court is not bound by the plaintiff's legal

conclusions. *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir.2001)(the mere

"presence. . .of a few conclusory legal terms does not insulate a complaint from dismissal under

Rule 12(b)(6)" if the facts do not support those legal conclusions).

B.  The Complaint Fails To Set Forth a *Prima Facie* Case Pursuant to the Computer
Fraud and Abuse Act (18 U.S.C. § 1030)(Counts I & II).

The Computer Fraud and Abuse Act was enacted by Congress in 1984 "to address the

problems of computer crime." 174 A.L.R. Fed 101 (2004).  In an effort to "keep apace with technological advances," it has been "amended and broadened" and presently includes "a civil action component" as well as the original criminal component. *Id.*

    1.  <u>Count I (18 U.S.C. § 1030(a)(2)(C))</u>:

Count I of the Plaintiff's Complaint alleges a violation of 18 U.S.C. § 1030(a)(2)(C) which states in pertinent part as follows:

> (a) Whoever --
>
>       \*   \*   \*
>
> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains --
>
>       \*   \*   \*
>
> (C) information from any protected computer if the conduct involved an interstate or foreign communication;

As is set forth in the Factual Background above, the Plaintiff does not allege that the Defendants were not authorized to access its databases during the period of time in which Beecham and Bertsch were responsible for managing the NHSC/METRiX contract.  To the contrary, they had the primary responsibility for the contract and were, of necessity, fully-authorized to utilize the Plaintiff's database and proprietary information (to the extent that any existed) as a part of their job responsibilities.  Further, the Plaintiff does not allege that the Defendants accessed or attempted to access its databases following their resignation from employment by the Plaintiff.

Any exposure to the Plaintiff's "confidential and proprietary information" or "trade

secrets" occurred with full authorization during a time period in which there is no allegation that the Defendants even contemplated forming a competing business.  Notably, the Plaintiff does not provide any detailed explanation of the nature of the alleged "confidential and proprietary information" or "trade secrets."  As the Plaintiff's contract with HHS is a federal government contract, neither its terms nor the Plaintiff's obligations or compensation thereunder could be confidential or proprietary or constitute a trade secret.  Rather, the Plaintiff seems to allege that it is the internal business operations of the Plaintiff which are confidential.  Assuming that to be true, however, the Plaintiff voluntarily exposed Beecham and Bertsch to those operations without requiring any restrictive employment covenants as is usually the case where employers harbor such concerns.

Neither Beecham nor Bertsch had an employment contract with Plaintiff and, as a result, their employment was merely "at will."  They were not restricted from resigning or forming a competing enterprise.  Upon resigning their employment, the Defendants obviously could not purge their minds of what they had learned during their tenure in the Plaintiff's employ.  Rather, what they learned became an element of their experience and job training.  Without a valid covenant not to compete (which the Plaintiff could have required as a condition of their employment), the Plaintiff has no basis to suggest that Beecham and Bertsch are in any way restricted from competing with it.  It is for precisely this reason that the Plaintiff has invoked the federal statutes in alleging computer fraud and violations of the Lanham Act.  In doing so, it hopes to gain through the court's equitable injunctive powers that which it did not negotiate for at the time the Defendants were hired -- namely a restriction on their ability to compete.

8

The facts in the instant matter stand in stark contrast to those in *Shurgard Storage Centers v. Safeguard Self Storarge*, 119 F.Supp.2d 1121 (W.D.Wash. 2000), a case in which there was a clear allegation of the use of a computer to defraud an employer.  In *Shurgard*, the Plaintiff, the "industry leader in full and self-service storage facilities in both the United States and Europe" employed one Eric Leland. *Id.* at 1122-23.  In late 1999, the defendant, Safeguard Self Storage, approached Mr. Leland and offered him a position. *Id.* at 1123.  "While still employed by the plaintiff, but acting as an agent for the defendant, Mr. Leland sent e-mails to the defendant containing various trade secrets and proprietary information belonging to the plaintiff." *Id.*  Because of his position with the plaintiff as a regional development manager, Mr. Leland had "full access to the plaintiff's confidential business plans, expansion plans, and other trade secrets." *Id.*

Plaintiff's allegations in the case *sub judice* do not remotely approach the actions alleged by the plaintiff in *Shurgard*.  METRiX sets forth in considerable detail at paragraphs 30 and 31 of its complaint the specific allegations of Defendants' fraud in using its computers.  None of those allegations include any wrongful access to or use of any  "confidential and proprietary information" or "trade secrets."  Rather, the allegations extend only to communication and planning of a competing enterprise (including the creation and/or storage of a website).  Such allegations are clearly insufficient to maintain an action under 18 U.S.C. § 1030(a)(2)(C).  The statute requires an allegation that the Defendants "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access."  There is no such allegation.

At worst, the Defendants made incidental use the Plaintiff's computers to plan their

resignation and competing business.  The Defendants were not restricted either by an employment contract or a covenant not to compete and even the "terms and conditions" of employment alleged by the Plaintiff anticipate personal use of its property (employees may "not make excessive or unauthorized use of METRiX property and supplies"; Complaint at 7, ¶17(j).) The Plaintiff's remedy for a violation of its "terms and conditions" of employment is obvious -- termination of employment.  Without the benefit of a contract of employment containing appropriate restrictive covenants, however, the Plaintiff cannot restrict the Defendants' ability to compete after their resignation.

Finally, and fatally, the Plaintiff has failed to allege any damages as the result of the allegations in Count I.  Even assuming, *arguendo*, that the Defendants violated the computer fraud statute, the Plaintiff does not allege that the Defendants have succeeded in securing any contract that would have been awarded to the Plaintiff had the Defendants not bid on that contract.  The only averment that even approaches such an allegation is found at paragraph 32(d) in which the Plaintiff alleges that "[o]n information and belief, on April 19, 2004, Defendants submitted a bid to manage an HHS nursing education loan repayment program." Complaint at 16.  The Plaintiff's Complaint is, at best, premature and, as currently drafted, fatally deficient.

2. Count II (18 U.S.C. § 1030(a)(4)):

18 U.S.C. § 1030(a)(4) states, in pertinent part, as follows:

(a) Whoever --

* * *

(4) knowingly and with intent to defraud, accesses a protected computer

10

without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use in not more than $5,000 in any 1-year period.

The significant distinction between 18 U.S.C. § 1030(a)(4) (the basis for Count II) and 18 U.S.C. § 1030(a)(2)(C) (the basis for Count I) is that § 1030(a)(4) goes beyond the mere access of a computer to situations where the unauthorized access occurs in tandem with an intent to defraud.  The Plaintiff, having failed to allege even unauthorized access, has clearly failed to allege an intent to defraud.  The Court is, again, respectfully referred to the specific allegations of the Complaint relating to the Defendants' use of the Plaintiff's computers. Complaint at 10-15, ¶¶30 & 31.

The averments set forth in the Plaintiff's Complaint allege nothing more than planning on the part of the Defendants to resign and form a competing enterprise.  Those actions would clearly constitute grounds for termination of the employment of Beecham and Bertsch.  Because there are no restrictions on the ability of the Defendants to compete with the Plaintiff, however, the allegations are simply incapable of rising to the level of fraud.

The specific allegation at paragraph 44 of the Plaintiff's Complaint is that the Defendants "[t]o further their interest in causing harm or detriment to METRiX in interstate commerce . . . knowingly and with intent to defraud intentionally accessed METRiX computers and computer systems and thereby obtained information from METRiX computers and computer systems, including METRiX's proprietary and confidential information and trade secrets. . ." Complaint at 20.  Paragraph 45 is nearly identical, the only distinction being the allegation that the Defendants

"exceeded authorized access" in attempting to defraud the Plaintiff. *Id.* These allegations, however, offer a crystalline example of the use of "a few conclusory legal terms" as described in *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir.2001). The allegations simply cannot be squared with the factual allegations of the Complaint which include no allegations of fraud. The unavoidable reality that is ignored by the Plaintiff in its Complaint is that it cannot restrict the Defendants' ability to compete with it. Beecham and Bertsch's use of the Plaintiff's computers in planning their competing enterprise, as alleged by the Plaintiff may constitute violations of the Plaintiff's policies of employment but do not constitute fraud.

As with Count I, the Plaintiff has failed to allege any damages with regard to Count II. Again, assuming that the Defendants somehow defrauded the Plaintiff, it fails to allege that the Defendants have succeeded in securing any contract that would have been awarded to the Plaintiff had the Defendants not bid on that contract. Its failure to do so is fatal.

In summary, the Plaintiff's effort to invoke the computer fraud and abuse statute is a mere illusion. Stripped of the aura of computer fraud, its allegations fall flat. Had, for example, the Defendants planned their competing business by use of the Plaintiff's legal pads and telephones instead of a computer, the ridiculous nature of its allegations would be clear. The Plaintiff, having failed to secure any restrictive covenant in employing Beecham and Bertsch and having trained them, now is attempting to restrict their ability to leave its employ and compete. The Plaintiff's transparent effort to have this Court create for it a restrictive covenant where none previously existed is entirely misplaced.

C. <u>The Complaint Fails To Set Forth a *Prima Facie* Case Pursuant to Section 43</u>

12

_____    (a) of the Lanham Act (Count III).

Count III of the Plaintiff's Complaint alleges a violation of Section 43(a) of the Lanham

Act which states, in pertinent part, as follows:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or
any container for goods, uses in commerce any word, term, name, symbol, or
device, or any combination thereof, or any false designation or origin, false or
misleading description of fact, or false or misleading representation of fact, which
--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the
affiliation, connection, or association of such person with another person,
or as to the origin, sponsorship, or approval of his or her goods, services,
or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature,
characteristics, qualities, geographic origin of his or her or another
person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is
likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(2004).

The Complaint alleges that the Defendants have violated the Lanham Act by utilizing

false representations so as to confuse or deceive "METRiX's current and future clients" as to:

"(a) the affiliation, connection, or association of Defendants, or each of
them, to METRiX or to clients and contracts of METRiX; and/or

(b) the origin, sponsorship, or approval by METRiX or by its clients of
Defendants' goos, services, or commercial activities.

Complaint at 22, ¶48.

Counsel for the Defendants has scoured the Complaint for specific factual allegations that

13

could potentially support this allegation.  Significantly, the Plaintiff does not allege that the Defendant has adopted a confusing name (*e.g.* METR*e*X instead of METR*i*X) or appropriated the Plaintiff's trade dress.  Rather, because the parties provide personal services, the Plaintiff is essentially alleging that Defendants have repackaged the Plaintiff's services and marketed those services as their own.  The technical term for such actions is "reverse passing off" which occurs most frequently where tangible goods produced by one person are re-packaged by another and sold as goods of the person who re-packaged same.

The most recent, and (for purposes of the instant case) perhaps the most enlightening, examination of this phenomena is found in *Dastar Corporation v. Twentieth Century Fox Film Corporation*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed2d 18 (2003).  In *Dastar*, Justice Scalia applied the Lanham Act to a situation in which the defendant had essentially copied an uncopyrighted television program and, with minor revisions, marketed the program as an historical set of videotapes without attribution to the plaintiff which had acquired the rights to the entity which produced the original television program. *Id.* at 27, *et seq.*, 123 S.Ct. at 2044, *et seq.*

*Dastar* explains that the "Lanham Act was intended to make actionable the deceptive and misleading use of marks and to protect persons engaged in. . .commerce against unfair competition." *Id.* at 28, 123 S.Ct. at 2045 (internal quotations omitted).  "While much of the Lanham Act addresses the registration, use , and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection." *Id.* at 29, 123 S.Ct. at 2045.

Notably, "§ 43(a) does not have boundless application as a remedy for unfair trade

14

practices . . . Because of its inherently limited wording, § 43(a) can never be a federal

'codification' of the overall law of 'unfair competition' but can apply only to certain unfair trade

practices prohibited by its text." *Id.* (internal quotations and citations omitted). The Supreme

Court concluded that the Lanham Act does embrace reverse passing off and noted that every

Circuit that has considered the issue has found similarly. *Id.* at 29, 123 S.Ct. at 2046.

In the instant case, the Plaintiff alleges that the Defendants have appropriated its services

and are marketing same as their own. Complaint at 21-22. It is undisputed that the services

provided by the Plaintiff to its customers are not protected by any trademark or copyright. The

only averments in the Complaint supporting the allegation of reverse passing off relate to certain

statements set forth on the Defendants' website. Specifically, the Plaintiff alleges as follows:

> Defendants' website is materially misleading because it falsely states or
> implies: (a) that Defendants, or any of them, were awarded contracts with the
> federal agencies listed by Defendants; (b) that Defendants 3Synergies has been in
> existence long enough to be awarded these contracts; and (c) that 3Synergies had
> any "long-term operational and technical engagement" with any federal agency.
> The website omits the material facts that (a) 3 synergies [sic] was not awarded
> these contracts; (b) that Defendants' only exposure to these federal contracts with
> "DHHS Food and Drug Administration," "DHHS Health Resources & Services
> Administration," and "Department of Transportation" was through METRiX; and
> (c) that METRiX has or has had federal contracts with these federal agencies and
> that METRiX performed the design and implementation described.

> Complaint at 14, ¶31.

The Complaint continues on to reference certain "Accolades for 3synergies team

members" that are included on the Defendants' website. *Id.* The Plaintiff alleges that,

> This claim is materially misleading because it falsely states and implies:
> (a) that Defendants, or any of them, received the accolade claimed; and (b) that
> Defendants, or any of them, were, at the time the accolade was made, affiliated or

associated with "3Synergies" or a "3Synergies team." Defendants' website omits the material facts: (a) that, at the time the accolade claimed was made, Defendants were employees of METRiX; (b) that the accolade claimed referred to METRiX; and (c) that METRiX had the contract by which the work described was performed.

Complaint at 15, ¶31.

The facts and allegations concerning the Lanham Act claim are remarkably similar to those in *Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*, 299 F. Supp.2d 565 (2004). In Tao, the parties operated competing aeronautical engineering firms and provided services primarily to the National Aeronautics and Space Administration ("NASA"). *Id.* at 568. As explained in the opinion,

Tao's claims stem from its allegation that AS&M misrepresented to [NASA] that AS&M owned intellectual property and expertise which actually belonged to Tao. Tao alleges that as a result of these misrepresentations, AS&M was granted a valuable services contract by NASA. Moreover, Tao alleges that because NASA has come to associate Tao's intellectual property and expertise with AS&M, Tao has been unable to secure new contracts with NASA.

*Id.*

The allegations of misrepresentation in Tao are remarkably similar to those in the Lanham Act count in the case at bar. In *Tao*, Tao alleged that, in a proposal submitted by AS&M, AS&M "took credit for expertise and capabilities belonging to Tao." *Id.* at 569. Specifically, Tao alleged that, during certain "flutter testing" it conducted on behalf of NASA, it had employed a Dr. Subbiah Venkateswaran who subsequently resigned from Tao and was later employed by AS&M. Tao alleged that AS&M submitted a proposal for another contract in which the "flutter testing" was referenced. Tao alleged that, in the AS&M proposal, AS&M

16

implied that "AS&M, rather than Tao, had performed the. . .flutter testing. . ." *Id.*  Tao further

alleged that AS&M's alleged misrepresentations "had the effect of confusing NASA as to the

nature of the two corporations and the services they provide. *Id.*

In its complaint, Tao included two federal counts under the Lanham Act -- reverse

passing off and false advertising -- both in violation of Section 43(a) of the Lanham Act.  With

regard to the reverse passing off, the District Court cited the Supreme Court's opinion in *Dastar*

in recognizing the existence of a cause of action under the Lanham Act.  Applying that holding to

the specific allegations in *Tao*, the district court examined the definition of "origin" since a

Lanham Act claim for reverse passing off requires a false designation of origin. *Id.* at 571.  The

opinion explains that the "origin of a good or service is the producer of the tangible product

offered for sale, not the author of any idea or concept embodied in that product." *Id.* at 572.

Further, "[t]he goods or services which are examined for a false designation of origin under a

reverse-passing-off claim are those of the defendant." *Id. (citing Williams v. UMG Recordings,*

*Inc.*, 281 F. Supp.2d 1177, 1184 (C.D.Cal.2003)(internal quotations omitted).  The court's

analysis continued as follows:

> Tao. . .does not allege a typical § 43(a) claim involving the misuse of a
> mark.  Tao concedes as much, clarifying its general allegation of a claim. . .as an
> action for reverse passing off.  The circumstances alleged by Tao, however, do not
> support such a claim.  **To state a claim for reverse passing off, Tao must allege**
> **that the actual goods provided to NASA by AS&M were in fact produced by**
> **Tao, or the actual services provided to NASA by AS&M were in fact**
> **performed by Tao.**  Neither Tao's amended complaint nor any other filing in this
> case provides a basis for suspecting that the goods and services which AS&M
> contracted to provide to NASA were actually provided by Tao.

> **Instead, Tao alleges that the defendants "made both false and**

17

**misleading representations of fact in the ETS Proposal."  The ETS Proposal may be an offer to contract, an advertisement, or a promotion, but it is not a good or service.  Moreoever, even if the ETS Proposal arguably was a good or service, there is no allegation that Tao, rather than AS&M, was the actual producer of the ETS Proposal.  Tao instead appears to claim that AS&M, in producing its own ETS Proposal, incorporated ideas or concepts that belonged to Tao.  This, however, is precisely the type of allegation which the Supreme Court rejected as the basis for a reverse-passing-off claim in *Dastar v. Twentieth Century Fox Film Corporation* [citation omitted].  Accordingly, Tao's claims of reverse passing off against all defendants under § 1125(a)(1)(A) are DISMISSED**.

> *Id.* (internal parentheticals omitted; emphasis supplied).

The allegations in Tao are nearly identical to those in the case at bar.  METRiX alleges that the Defendants violated the Lanham Act by,

> using in interstate commerce false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact, all of which is likely to cause METRiX's current and future clients confusion or mistake, or to deceive them, as to:
>
> (a) the affiliation, connection, or association of Defendants, or each of them, to METRiX or to clients and contracts of METRiX; and/or
>
> (b) the origin, sponsorship, or approval by METRiX or by its clients of Defendants' goods, services, or commercial activities.

> Complaint at 22, ¶48

As is explained in detail in *Tao*, for METRiX to state a valid claim under the Lanham Act, it must allege that Defendants have provided a good or service to a customer while misrepresenting it as the product of METRiX.  This is the essence of a reverse passing off claim under the Lanham Act.  METRiX has failed to even allege that the Defendants have provided any good or service to anyone.  At best, it alleges that it believes that Defendants may have submitted

a bid on another government contract.  Further, the statements on Defendants' website do not

constitute a good or service and, even if they did, there is no allegation that METRiX is the

origin thereof (*i.e.* the producer of that information).

A similar result was reached by Fourth Circuit Court of Appeals in *Scheduled Airlines*

*Traffic Offices, Inc. v. Objective, Inc.*, 180 F.3d 583 (1999).  The plaintiff in that case, Scheduled

Airlines Traffic Offices, Inc. ("SATO") provided travel management services and had contracted

with Objective, Inc. ("Objective") to develop certain computer software to aid in its planned

expansion into the private sector.  *Id.* at 586.  The software developed by Objective was

ultimately inoperable and Objective abandoned the project. *Id.* at 587.  After SATO brought suit,

Objective filed a counterclaim alleging, *inter alia*, violations of the Lanham Act. *Id.*  The basis

for Objective's allegation was that SATO, in completing the software, utilized Objective's work

product. *Id.*  Specifically, Objective argued that "SATO misrepresented to prospective customers

that it developed the software that Objective authored. . ." *Id.* at 590.  The claim was dismissed

on summary judgment based upon the district court's finding that SATO "did not pass off

[Objective's] product as its own nor did it unlawfully conceal defendant's identity." *Id.*

In reviewing the summary judgment, the appellate court discussed Objective's reliance on

*Smith v. Montoro*, 648 F.2d 602 (9th Cir.1981), a reverse passing off case in which "the name of

an actor in a movie was replaced with another name in the credits." *Id.* at 591.  The appellate

court held that Objective's reliance thereon was misplaced due to the fact that "there is no

allegation that SATO removed Objective's name or trademark from the software." *Id.*

In the Complaint in the instant matter, METRiX does not allege any trademark or

19

copyright violations.  Further, it does not allege that Defendants obliterated or changed the

designation of origin on any good or service created by METRiX and subsequently marketed it as

its own.  In fact, the Plaintiff fails to allege that the Defendants have provided any good or

service.  Accordingly, the Plaintiff's Lanham Act claim must be dismissed.

     D.   <u>The Complaint Fails to Allege a Violation of the Maryland Uniform Trade Secrets</u>
           <u>Act (Md. Code Ann., Com. II Law § 11-1201, *et seq.*)</u>

In Count IV of the Complaint, the Plaintiff alleges violations of the Maryland Uniform

Trade Secrets Act ("MUTSA"; Md. Code Ann., Com. Law II, § 11-1201, *et seq*.).  In various

statements in the Complaint, the Plaintiff made vague references to certain "proprietary

information" and/or "trade secrets" to which Defendants Beecham and Bertsch allegedly had

access.  The most detailed description in the entire pleading states only that the trade secrets

include "pricing information, teaming strategies, and the overall structure of the METRiX

proposal [on the NELRP contract]."  Complaint at 16, ¶ 32(d).

MUTSA has been the subject of numerous opinions in the Maryland state and federal

courts.  Allegations of violations frequently occur in situations such as that presented in this case

where employees of the plaintiff resign to form a competing enterprise.  Since adoption of the

uniform act in Maryland in 1989, MUTSA has frequently been relied upon as the basis for claims

against the former employees. *See generally*, 31 U.Balt. Law Review 181, et seq. (2002).  The

resulting body of case law has shed light on the requirements necessary for a valid claim under

the act.

To be protected under Maryland law as a trade secret, "information must be secret, and its

value must derive from the secrecy.  In addition, the owner of the information must use reasonable efforts to safeguard the confidentiality of the information." *Montgomery County Ass'n of Realtors v. Realty Photo Master Corp.*, 878 F. Supp. 804, 814 (D. Md. 1995), *aff'd*, 91 F.3d 132 (4th Cir.1996); *see also*, *Motor City Bagels, L.L.C. v. American Bagel Company*, 50 F.Supp.2d 460 (1999).  The Maryland Court of Appeals has held that a manufacturer's marketing plan is not protectable as a trade secret if it is based upon information that is "readily available from the marketplace." *Optic Graphics, Inc. v. Agee*, 87 Md. App. 770, 788, 591 A.2d 578 (1991).

In the instant case, the Plaintiff alleges that Defendants Beecham and Bertsch, through their efforts on the NHSC/METRiX contract, were "privy to critical proprietary information and trade secrets that included pricing information, teaming strategies, and the overall structure of the METRiX proposal." Complaint at 16, ¶32(d).  The elements of the allegedly proprietary information cannot, however, be protectable under MUTSA.  The two projects upon which Beecham and Bertsch worked while employed by the Plaintiff include the NHSC/METRiX contract and the NELRP proposal.  Both contracts, as described by the Plaintiff, are federal government contracts.  As such, the "pricing information," "teaming strategies" and "overall structure" of the contract/bid cannot be kept secret.  The information was freely submitted by METRiX to the government and is available to the public.  Even assuming that the referenced information is protectable, its "ready availability in the marketplace" is, in and of itself, a substantial basis for dismissing the count.  The Supreme Court has held that the disclosure of trade secrets "to others who are under no obligation to protect the confidentiality of the

21

information" extinguishes the property right in the disclosure. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984).

The Plaintiff also fails entirely to allege any factual basis for the bare allegation that its "trade secrets" were the subject of reasonable efforts to maintain their secrecy. Complaint at 24, ¶52(b). The only factual averment relating to any effort to maintain secrecy is a reference to certain "terms and conditions" of Beecham and Bertsch's employment which included a requirement that "confidential or proprietary information and trade secrets of METRiX be 'safeguarded' and 'held in strict confidentiality'." Complaint at 6, ¶17(e). Notably, neither Beecham nor Bertsch were required to execute employment agreements, non-competition agreements, non-disclosure agreements or non-solicitation agreements. There is not even an explanation in the Complaint concerning how Beecham and Bertsch agreed to the stated terms and conditions of employment. Without evidence of reasonable efforts to maintain secrecy, the Plaintiff cannot succeed on this count. *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 664 (4th Cir. 1993).

Finally, the Plaintiff has failed to set forth a sufficient allegation that there was either a misappropriation or disclosure of any trade secret which is a requirement of MUTSA. It is acknowledged by the Plaintiff in its Complaint that, to the extent Beecham and Bertsch were exposed to any trade secrets, the exposure occurred in the context of their employment by the Plaintiff. Therefore, their acquisition of knowledge regarding any trade secrets was entirely proper. The allegation that they subsequently "misappropriated" trade secrets by disclosing those trade secrets to Defendant 3Synergies is entirely unsupported by any facts to support that

22

allegation.  As a result, Count IV should be dismissed for failure to state a claim upon which relief can be granted.

E.  Deceit (Count V).

In Count V, the Plaintiff alleges common-law deceit, also commonly referred to as non-disclosure or concealment.  To recover for deceit, a plaintiff must establish:

(a) that the defendant intentionally concealed a material fact,

(b) with the intent to induce the plaintiff to act differently from how the plaintiff would have acted had it known the true facts; and,

(c) because of the concealment the plaintiff acted in a manner different from how he or she would have acted had the plaintiff known the true facts;, and

(d) plaintiff suffered damages as a result of that reliance.

*See Lubore v. RPM Associates, Inc.*, 109 Md. App. 312, 674 A.2d 547, *cert. denied*, 343 Md. 55, 683 A.2d 177 (1996).

With the exception of the sexual harassment claim, all of the allegations made by the Plaintiff relate to the efforts of Defendants Beecham and Bertsch to prepare to compete with the Plaintiff.  As is discussed in great detail in Section E below, Maryland law protects the ability of employees to prepare to compete with their employer.  As a result, there is no valid claim for any "unauthorized use of METRiX computers and computer systems."  Further, the Plaintiff has not alleged any damages related to the use of this equipment, the value of which was not diminished by the Defendants' use of same to prepare to compete.

With regard to the issue of alleged proprietary and confidential information and trade secrets, those items are the subject of the MUTSA analysis set forth in Section D, *supra*.  As is

explained therein, there is no valid claim for a MUTSA violation and, as a result, the plaintiff

cannot attempt to recast that defective claim as a common-law claim for deceit. The plaintiff has

failed to properly allege even the existence of protectable trade secrets, much less the improper

acquisition or disclosure of same. Finally, the allegation of concealment of the alleged sexual

harassment is non-sensical. There are no specific allegations that any Defendant concealed

anything. To the contrary, the Plaintiff, in Count XI, acknowledges that it had knowledge of the

claim and allegedly reached some sort of settlement of the allegations. Not having pleaded that it

was without knowledge of the allegation, the Plaintiff clearly fails to allege how it could have or

would have acted differently, absent concealment..

  F. <u>Breach of Contract (Count VI).</u>

  Dismissal of Count VI is required for a simple reason - the Plaintiff's failure to allege the

existence of a contract. It is undisputed that the Defendants were employees at will and had no

employment contract. It is, of course, the absence of a contract (or other agreement, express or

implied, which renders the term of employment something other than indefinite) which

characterizes an employment at-will. *Shapiro v. Massengill*, 105 Md. App. 743, 661 A.2d 202

(1995). The allegations may suffice to allege a mere violation of a policy of employment for

which the Defendants could have been terminated but do not allege a breach of contract. There

being no contract (or even an allegation of the existence of an employment contract), there can be

no breach and the count must be dismissed.

  G. <u>Breach of Fiduciary Duty (Count VII).</u>

  It is Count VII, tucked into the middle of the Complaint, that is truly at the heart of the

instant dispute.  The crucial relief sought by Plaintiff is an order preventing its former employees from forming a competing business.  Because Maryland law clearly protects the ability of employees to resign and compete, the Plaintiff has carefully cloaked this goal in allegations of computer fraud, violations of the Lanham Act and the Maryland Uniform Trade Secrets Act as well as myriad violations of common law obligations.  Conspicuously missing from the Complaint are any allegations that Defendants Beecham and Bertsch violated the terms of any employment agreement or restrictive covenant.  This is, of course, due to the fact that the Plaintiff did not deem such protection important when the Defendants were hired.  It now seeks to obtain via the "back-door" that which is cannot gain through the "front-door."

The rights and obligations of employees in preparing to compete with employers in this State were conclusively established by the Maryland Court of Appeals in *Maryland Metals, Inc. v. Metzner*, 282 Md. 31 (1978).  In that opinion, the court frames the scope of its analysis as "consider[ing] the extent to which officers and high-level managerial employees may, prior to termination of the employment relationship, make preparations to compete with their corporate employer without violating fiduciary obligations running to the corporation. *Id.* at 33.

The court began its analysis by acknowledging the interplay between the duty of an employee to "act solely for the benefit of his employer in all matters within the scope of employment" and "society's interest in fostering free and vigorous competition." *Id.* at 38. Clearly prohibited behavior includes "actively competing with [an] employer **during** the tenure of. . .employment" and solicitation of customers and employees during the period of employment. *Id.*  Absent restrictive covenants, those obligations terminate upon the conclusion

25

of the employment relationship. *Id.*  The result of the various competing interests has resulted in "the recognition of a privilege in favor of employees which enables them to prepare or make arrangements to compete with their employers prior to leaving the employ of their prospective rivals without fear of incurring liability for breach of their fiduciary duty of loyalty. *Id.* At 39 (*citing, inter alia, Operations Research v. Davidson*, 241 Md. 550, 217 A.2d 375 (1966).

An employee is "not bound to reveal the precise nature of his plans to the employer unless he has acted inimically to the employer's interest beyond the mere failure to disclose." *Maryland Metals* at 40.  In *Maryland Metals*, the defendants, prior to ending their employment, formed a corporation, contacted a prospective investor, filed a loan application with a bank, contacted a power company and secured an option on a tract of land. *Id.*  Beyond mere non-disclosure, "there [was] evidence that [the defendants] actively concealed their preparations from [the plaintiff]." *Id.* at 43.  The court characterized their actions as "manifestly preparatory in nature" and required that the plaintiff establish that they had "been guilty of unfair, fraudulent or wrongful conduct beyond the mere failure to disclose, which impacted on the economic interest of their former principal in some detrimental fashion." *Id.*  Importantly, the future competition itself is not a sufficient economic impact despite the fact that it "will eventually prove harmful to the former employer." *Id.* at 40 *(citing Cudahy Company v. American Laboratories, Inc., 313 F.Supp. 1339, 1346 (D.Neb.1970)).*

Like the plaintiff in *Maryland Metals*, the Plaintiff in the instant case makes no allegation that the Defendants solicited any customer or employee during their employment.  At best it alleges that the Defendants utilized trade secrets in competing with the Plaintiff.  While

the existence of a valid trade secrets claim is addressed at length above, the Court of Appeals, in *Maryland Metals*, noted that "an employee enjoys a right, in competing against his former employer, to utilize general experience, knowledge, memory and skill – as opposed to specialized, unique or confidential information – gained as a consequence of his employment." *Id.* at 46 (*citing Operations Research v. Davidson*, 241 Md. at 567. The court recognized that "[r]educed to its essence. . .appellant's claim is that [the defendants] violated their fiduciary duties by concealing the details of their preparatory activities aimed at setting up a competitive business in the future. Despite appellant's strenuous protestations, **the conduct complained of is precisely what the law permits**." *Id.* at 47 (emphasis supplied). Absent allegations that the Defendants actively competed with the Plaintiff during their employment or solicited customers or employees of the Plaintiff, the allegations of breach of fiduciary duty must fail.

H. <u>Intentional Interference with Contract and Intentional Interference with Contractual Relations (Counts VIII & IX).</u>

Counts VIII and IX are nearly identical. Both allege that the Defendants "intentionally, willfully and deliberately interfered with the carrying out of [the HHS] contracts." Complaint at 33, ¶74 and 34, ¶79. The balance of the Complaint, however, contains almost no references to any facts in support of this allegation. The only factual averments that are even conceivably related to these two counts are included in paragraph 32 which alleges that the Defendants "hired more staff than the NHSC/METRiX Contract could bear, creating an overage" and that Beecham and Bertsch "redirected Caruzzi [another employee] and, thereby, exhausted the funds that HHS would have used to compensate METRiX."

27

Both counts fall under the umbrella of interference with economic relations which embraces two distinct types of torts: (a) intentional and improper inducement of a breach of an existing contract, and (b) intentional and improper interference with economic relationships (in absence of breach of contract) or business expectations. *See generally*, *K&K Management, Inc. v. Lee*, 316 Md. 137, 557 A.2d 965 (1989).

In the instant matter, the Plaintiff does **not** allege that any customer of METRiX breached any contract that it may have had with METRiX because of any improper acts of any Defendant -- an allegation that, if true, would potentially be actionable. *Orfanos v. Athenian, Inc.*, 66 Md. App. 507, 505 A.2d 131 (1986).  As a result, METRiX must properly allege interference with either METRiX's "business expectations" or non-contractual "economic relationships."  Any potential liability for "business expectations" is more properly the subject of Count VII (Breach of Fiduciary Duty) which has already been exhaustively discussed above.  Therefore, the only remaining potential cause of action would be interference with its economic relationships.

A successful claim for interference must demonstrate the following:

a) existence of a contract;

b) knowledge by the defendant of the existence of the contract;

c) intentional and improper conduct by the defendant **which induces the third party to breach the contract or otherwise render it impossible for the third party to perform under the contract**;

d) the third party's **subsequent breach or inability to perform**; and

e) **damages** resulting from the breach or non-performance.

*Stanndard v. McCool*, 198 Md. 609, 84 A.2d 862 (1951)(emphasis

supplied).

The Plaintiff's allegations herein do not satisfy the long-established elements established by the Maryland Court of Appeals to successfully prosecute a claim for tortious interference. At best, the Plaintiff has alleged that Defendants Beecham and Bertsch performed poorly as employees with regard to the HHS contract. Even assuming, *arguendo*, that Beecham and Bertsch conducted themselves improperly, there is no allegation that HHS subsequently breached the contract or, in any manner, was unable to perform. To the contrary, HHS has fully performed and the Plaintiff has been paid, as required, for its services. As a consequence, the Plaintiff has alleged no damages as the result of any improper action on the part of the Defendants.

    I. <u>Trespass to Chattels (Count X).</u>

Count X attempts to allege a common law claim for trespass to chattels. The "chattels" include METRiX's computers, computer systems, computer databases, and confidential and proprietary information. Complaint at 35, ¶84. The Complaint fails to allege, however, that the Defendants' access to the chattels was unauthorized. To the contrary, the Plaintiff acknowledges that "[a]s part of their employment, METRiX provided Beecham and Bertsch with METRiX computers, METRiX computer equipment, and access to METRiX computer databases and to other databases. . ." *Id.* at 5, ¶16.

Perhaps the most comprehensive definition of the tort is set forth in the Maryland Pattern Jury Instruction which states that,

> [w]hen a person, without authority or permission, physically interferes with the use or enjoyment of another's personal property, the interference constitutes either a conversion or trespass. . .Interference amounts to trespass

when it is minor and does not result in such serious damages as to constitute a conversion. . .

MPJI 16:3. *See generally*, *Staub v. Staub*, 37 Md. App. 141, 376 A.2d 1129 (1977).

The Plaintiff's Complaint fails entirely to allege a trespass to chattels.  First, the Defendants' access to the chattels was with the full authorization of the Plaintiff.  Second, even if the Plaintiff could successfully argue that the Plaintiff's access exceeded that to which they were authorized, it has failed to allege any diminution in value to the chattels.  The damages in a case of trespass to chattels has been long-established as the value of the loss of use. *Kirby v. Porter*, 144 Md. 261 (1923).  The Plaintiff fails to allege that it requested or required use of the chattels of the Defendants during the period of their possession and, consequently, it could not, as a matter of law, have been damaged by any trespass.

The concept of trespass to chattels was applied to a case with similar facts to those in the instant matter in *Diamond v. T. Rowe Price Associates, Inc.*, 852 F.Supp. 372 (1994).  Citing *Staub*, the District Court confirmed the measure of damages as being the "diminished value of the chattel." *Id.* at 411.  Like METRiX in this case, T. Rowe Price could offer no evidence of a diminution in value of the subject chattels (certain documents which the employer unsuccesfully alleged to contain trade secrets). *Id.*  The chattels not having been harmed and T. Rowe Price's operations not having been "hampered," the interference was found not to be actionable. *Id.* Based upon the same logic applied in *Diamond*, Count X must be dismissed.

J.   Indemnity/Contribution (Count XI).

30

In Count XI[2], the Plaintiff seeks indemnification and/or contribution based upon facts which are entirely unrelated to the Defendants' resignation of their employment. This count relates to the Plaintiff's alleged payment of money to resolve "allegations of sexual harassment against Beecham and Bertsch by a non-managerial employee of METRiX." Complaint at 36, ¶89.

The claim for contribution is defective as a matter of law. It has been long-established that, if the Plaintiff cannot rely upon any statute or rule in support of its claim, it must establish a common-law equitable claim. *See generally*, *Webert v. Lauman*, 91 Md. 90, 45 A.870 (1900). To recover in equity, it must establish that:

>  (a) the parties are under a common burden or liability;

>  (b) the property of the plaintiff as a co-debtor was taken in satisfaction of the debt;

>  (c) the person paying is under a legal obligation to pay; and,

>  (d) the amount paid was the whole amount due or more than his pro rata share of the common obligation.

>  *Id.*

The Plaintiff's Complaint completely fails to allege any of the required elements. There is no allegation of a common burden or liability. Moreover, the money allegedly paid by the Plaintiff was paid voluntarily. It was not in satisfaction of a debt and there is no allegation of any obligation to pay. There is, therefore, no basis for a claim of contribution.

The claim for indemnification is even more misplaced. A right of indemnity can arise

---

[2]  The Plaintiff's Complaint erroneously includes two separate counts which are identified as Count XI.

only as the result of an agreement, express or implied, between the parties. *See Liberty Mut. Ins. Co. v. Storch*, 23 Md. App. 43, 325 A.2d 760 (1974).  To recover, a plaintiff must demonstrate that:

> (a) there was an agreement by one party to indemnify the other; and,
>
> (b) the indemnified occurrence came to pass.
>
> *Id.*

The Plaintiff has not alleged the existence of any such agreement.  In the absence of an express agreement, it must allege the existence of an implied contract under which the primary wrongdoer is obliged to respond for all or part of the damages which the original plaintiff has asserted against the original defendant. *Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321 (1984), *on remand*, 61 Md. App. 492, 487 A.2d 658 (1985).  This is not what is alleged in the Plaintiff's Complaint.  The Complaint merely alleges that the Plaintiff **voluntarily** paid money to resolve a claim brought by a third party against the Plaintiff.  No liability was imposed upon the Plaintiff.  To the contrary, the nature of the settlement was to avoid the imposition of any liability.

The Plaintiff's allegations are not sufficient to create any implied contract between the Plaintiff and Defendant Beecham.  In apparent recognition of this reality, the Plaintiff alleges that the Defendants have been "unjustly enriched by METRiX's payment of the settlement." Complaint at 37, ¶93.  There can be no unjust enrichment, however, as the there has been neither inequitable acceptance or retention of any benefit by any Defendant. *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. 766, 471 A.2d 1121 (1984).

K.  Declaratory Judgment (Count XI(a)).

The final count merely seeks a declaratory judgment as separate relief based upon other claims in the Complaint.  As those claims are defective, the Plaintiff is not entitled to the requested relief.  There being no independent causes of action in this count, it requires no separate discussion.

## IV.  CONCLUSION

The instant matter is nothing more than a case of preparation for competition writ large. The Plaintiff, not having secured for itself any restrictive covenants, is now attempting to obtain those restrictions via the instant case.  As has been detailed in this motion, the Plaintiff is seeking the same relief as the plaintiff in *Maryland Metals, Inc. v. Metzner*, 282 Md. 31 (1978).  Its transparent effort can be characterized in the same fashion as the plaintiff in *Maryland Metals*: "Reduced to its essence. . .[plaintiff's] claim is that [the defendants] violated their fiduciary duties by concealing the details of their preparatory activities aimed at setting up a competitive business in the future.  Despite appellant's strenuous protestations, **the conduct complained of is precisely what the law permits**." *Id.* at 47(emphasis supplied).  The law is crystal clear in this regard.

The Plaintiff's reliance on federal claims of computer fraud and violations of the Lanham Act are transparent efforts to deflect attention from the true nature of its complaint.  Simply stated, the Plaintiff seeks to enjoin the Defendants from competition for federal contracts. Notably, the Plaintiff neither requested nor obtained any restrictive covenants or made any identifiable effort to maintain the secrecy of any allegedly confidential information.  Further, to

33

the extent that any confidential or proprietary information ever existed, it was disclosed in bids for contracts with the federal government. The very nature of the Plaintiff's business precludes the existence of trade secrets and, indeed, the Plaintiff carefully avoids any specific identification of any such information beyond vague references to "pricing information," "teaming strategies" and the "overall structure" of its bids. This is not, nor could it be, a trade secret as that term has been defined in the State of Maryland.

The balance of the counts in the Complaint evidence an obvious effort to throw as many claims as possible at the Defendants in the hopes that something may "stick." The Plaintiff's desperation is, perhaps, best demonstrated by the breach of contract claim (where it is undisputed that no contract even exists between the parties) and the claim of trespass to chattels (for use of the Plaintiff's computers in planning a competing enterprise).

The Plaintiff should not be permitted to stifle legitimate competition by a war of attrition. It is clearly attempting to smother the Defendants' fledgling company by embroiling it in the instant lawsuit. Its efforts in this regard are, frankly, reprehensible and should not be sanctioned by this Court.

WHEREFORE, the Defendants, JAY H. BEECHAM, MIRIAM BERTSCH and 3 SYNERGIES, INC., respectfully request that this Honorable Court dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

_____

THOMAS D. MURPHY, Atty. No. 01039


_____

JAMES A. MOOD, JR., Atty. No. 11990
Murphy & Mood, P.C.
Adams Law Center
31 Wood Lane
Rockville, Maryland 20850
301-424-0400
Attorneys for Defendants


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of May, 2004, that a copy of the foregoing

Memorandum of Law was mailed by first class mail, postage prepaid, to the following:

> Mitchell J. Rotbert, Esquire
> John A. Bonello, Esquire
> The Rotbert Law Group, LLC
> 111 Rockville Pike, Suite 400
> Rockville, Maryland 20850
> Attorney for Plaintiff


_____

THOMAS D. MURPHY

35